■ In the Matter of BABYLON MILK & CREAM Co., INC., Respondent, v. DON J. WICKHAM, as Commissioner of Agriculture and Markets of the State of New York, Appellant.— In a proceeding under article 78 of the Civil Practice Act to compel the Commissioner of Agriculture and Markets to issue a milk license to petitioner " in the language and form heretofore issued to it ", the Commissioner appeals from an order of the Supreme Court at Special Term which granted the application and directed that there be substituted for the clause in petitioner's 1962–1963 license which limited petitioner " to the operation of 18 wholesale milk routes and two temporary school routes in Nassau and Suffolk Counties and to other dealers " a clause limiting petitioner " to the sale and delivery of milk in Nassau and Suffolk Counties at wholesale and to other licensed milk dealers ", thus intending (although ineffectually, as will be shown) to remove all limitations upon the number of milk delivery routes petitioner might operate within the two counties specified. Special Term held that the Commissioner's power to impose limitations is restricted by the literal language of section 258 of the Agriculture and Markets Law authorizing the Commissioner to issue licenses " limited to a particular city or village or to a particular market or markets " and that he is without authority to limit a license to a particular route or routes within a marketing area. The Commissioner contends for a liberal construction of his grant of power under the statute so definitely enacted for the public welfare and protection (see Agriculture and Markets Law, §§ 258-k, 254, subds. [a], [d]) and argues that the limitations here imposed were authorized by the provisions of section 258, read with certain of the provisions of section 258-c. Section 258 requires the applicant to " state such facts concerning his circumstances and the nature of the business to be conducted as in the opinion of the commissioner are necessary for the administration of this chapter " (and in this case the application, which was for *renewal,* specified the routes then being operated and the renewal license limited petitioner's operations to these) while the provisions of the next to the last paragraph of section 258-c

authorize the Commissioner to renew a license " conditionally "; and, whether as necessary or as merely incidental to this contention, the Commissioner argues further that the term " new additional facility ", appearing in the first paragraph of section 258-c and with which he is authorized to deal, includes a new or additional milk delivery route. We do not reach the merits, however, as it is abundantly clear that the petitioner is in no way aggrieved and that the petition must be dismissed. As has been noted, the prayer for relief is that the Commissioner be compelled to issue to petitioner a license " in the language and form heretofore issued to it "; but the 1962–1963 license is no different, in scope and practical effect, from that issued to petitioner for 1961–1962 or that issued to it for 1960–1961, as for each of the three periods petitioner was licensed to operate " in accordance with the intent indicated in the licensee's application  *  *  * in the market' or markets specifically named therein, and in no other market or markets, *and then only on the route or number of routes of the character (wholesale or retail) indicated therein*" (emphasis supplied), this being the language of the printed form; and in each year the application upon which the license was issued specified the number and character of the milk delivery routes then operated. Further, during the term of its 1961–1962 license, petitioner twice applied for extensions of that license to permit the operation of additional specified routes and extensions were granted accordingly by riders "to be attached to and made part of" the existing license. The second rider, after authorizing the additional routes, stated: "Licensee is now authorized to operate 18 wholesale routes and two special school routes in Nassau and Suffolk Counties" and this language was repeated, nearly *verbatim*, in typewritten form in the 1962–1963 license. Thus the 1962–1963 license and the 1961–1962 license, as amended by the riders, were, so far as here material, identical as respected limitations to specifically designated routes; and petitioner sought a renewal of the prior license and obtained exactly that. Indeed, three successive licenses were alike, even without specific enumeration of the routes, as the 1962–1963, the 1961–1962 and the 1960–1961 licenses effected the same limitations by reference, in each case by the printed clause hereinbefore quoted, to the respective applications; with the result that the specific typewritten clause in the license in issue was no more than a restatement of and elaboration upon the printed limitation clause appearing in that and in the two preceding licenses, and the relief which petitioner sought and which Special Term granted, that is, the deletion of the typewritten clause and a duplication of the provisions of the previous license, was improper under the petition itself and, further, was purely academic. Finally, it may be noted, although not as necessary to our decision, that there is no showing that petitioner has sustained or will sustain any injury, there appearing no more than the bare and conclusory allegation of the petition that " by reason of the premises, the petitioner has been and will in the future be injured in the operation of its business ". We do not, of course, suggest that the scope of the Commissioner's authority to impose the limitations here attacked may not be tested, whether by an article 78 proceeding or by other appropriate procedure, but certainly that issue may not be reached on the papers now before us. Order reversed, on the law and the facts, with $10 costs, and petition dismissed, with costs. Bergan, P. J., Coon, Gibson, Reynolds and Taylor, JJ., concur.